**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ignacio Gomez,<br>Plaintiff,<br>v.<br>Unite US Inc.,<br>Defendant. | No. CV-25-03778-PHX-SHD<br>**ORDER** |

Pending is Defendant Unite US Incorporated's ("Unite") Motion to Dismiss Plaintiff Ignacio Perez's First Amended Complaint ("Motion"). (Doc. 20.) For the following reasons, Unite's motion to dismiss will be **granted in part** and **denied in part**.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Ignacio Gomez ("Gomez") worked for Unite as a Sales Executive from February 28, 2024, until Unite terminated his employment on April 30, 2025. (Doc. 12 at ¶¶ 7, 21.) Gomez alleges he met or exceeded performance expectations during his employment and managed significant accounts for Unite. (*Id*. at ¶¶ 7–8.) In early 2025, Gomez's manager, Jessica Ohlssen ("Ohlssen"), publicly criticized him, questioned the accuracy of his sales reporting, excluded him from meetings and account-related opportunities, and otherwise treated him differently from "similarly situated employees." (*Id*. at ¶¶ 10–17.)

In response to Unite's request that Gomez update his LinkedIn profile, Gomez told Unite's marketing team that he could not do so because any work-related or travel

information he shared publicly could expose him to renewed harassment from a third party against whom Gomez had a protective order. (*Id*. at ¶ 19.) Gomez proposed an alternative arrangement "that would satisfy business objectives without endangering himself." (*Id*.) Unite's marketing team escalated the alternative arrangement to Ohlssen but did not investigate or otherwise address Gomez's concern of exposure to renewed harassment. (*Id*. at ¶¶ 19–20.) About three hours after Gomez disclosed the protective order and declined to update his profile, Unite terminated his employment based on "performance." (*Id*. at ¶ 21.) Gomez requested clarification regarding the termination, and Unite's Human Resources Department declined to provide any information other than confirming that Ohlssen made the decision. (*Id*.)

After his termination, Ohlssen falsely told Unite employees, clients—including Contexture, Willamette Health Council, and Banner Health—and unrelated third parties that Gomez engaged in financial misconduct, misused a company credit card for travel expenses, and maintained dual employment. (*Id*. at ¶¶ 22–29, 46–48.) Gomez alleges these statements were false and that Ohlssen had authorized the charges characterized as improper, and that Unite's records confirmed these authorizations. (*Id*. at ¶¶ 24–25, 28–29, 35–40, 60–64.) Based on Unite's statements, Contexture rescinded an employment offer it had made to Gomez, and Gomez alleges Unite's statements also impaired other employment opportunities, and caused him reputational, economic, and emotional harm. (*Id*. at ¶¶ 29–33, 38, 49–57, 65.)

Gomez further alleges that Unite's conduct caused him to lose earned or vested commissions under Unite's commission plan that he fails to describe or define in any detail. (*Id*. at ¶¶ 30–33, 95–100.) Gomez alleges that the Contexture account that was previously designated as one of his projects was "materially reassigned" around January 2025, which interrupted his "commissionable path and pipeline visibility." (*Id*. at ¶ 14.) He also alleges that his commission eligibility encompassed "the Contexture statewide relationship and the Oyen Wellness $250,000 Oregon grant award." (*Id*. at ¶ 97.) He alleges that Unite's "reassignments and fabricated policy accusations were timed" to deprive him of

compensation-plan benefits, including commissions that had vested at the time of his termination date. (*Id.* at ¶¶ 97, 99.) He alleges that he lost at least $60,000 in earned commissions associated with the Contexture and Oyen Wellness accounts. (*Id.* at ¶¶ 30, 33, 49, 53.)

Gomez filed this action in Maricopa County Superior Court on July 8, 2025. (*See* Doc. 1-1 at 34-73.) Unite removed the case to this court on October 10, 2025. (Doc. 1.) Gomez filed his First Amended Complaint ("FAC") on October 23, 2025. (Doc. 12.) Gomez asserts five claims in the FAC: defamation per se (Count 1); retaliation under the Arizona Employment Protection Act ("AEPA") (Count 2); intentional infliction of emotional distress ("IIED") (Count 3); negligent supervision and retention (Count 4); and breach of the implied covenant of good faith and fair dealing (Count 5).

Unite moved to dismiss the FAC in its entirety. (Doc. 20.) In his Response, Gomez opposed the Motion and voluntarily withdrew Count 4 without prejudice. (Doc. 24 at 11–12.) Unite replied, and the Motion is fully briefed.[1]

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," and construed in a light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, legal conclusions are not accepted as true, nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" considered. *Id.*; *see also id.* ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (citation modified)). That said, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "well-pleaded

---

[1] The parties did not request oral argument, and it is not necessary, so this motion is decided without holding a hearing. *See* LRCiv 7.2(f).

complaint may proceed even if . . . actual proof of those facts is improbable, and [] a recovery is very remote and unlikely." *Id.* at 556 (citation modified).

Courts liberally construe the pleadings of pro se plaintiffs. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Pro se complaints "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quotation marks omitted). "A liberal construction of a pro se complaint, however, does not mean that the court will supply essential elements of a claim that are absent from the complaint." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (citing *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)).

## III. DISCUSSION

### A. Rule 12(g)(2)

As a preliminary matter, I address Gomez's argument that Unite's Motion violates Federal Rule of Civil Procedure 12(g)(2). Unite filed its first motion to dismiss in response to Gomez's original complaint. (Doc. 7.) Gomez subsequently filed his FAC as a matter of right, thereby superseding the original complaint and rendering the prior motion to dismiss moot. (Docs. 12.) The FAC is therefore the operative pleading in this section.

Rule 12(g)(2) provides that, except as provided in Rule 12(h)(2) or (3), a party that makes a Rule 12 motion may not make another Rule 12 motion "raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The Rule therefore prohibits a party from withholding an available Rule 12 defense and later raising that omitted defense through serial motion practice. *Vassallo v. Rural/Metro Corp.*, 2018 WL 6531599, at *1 (D. Ariz. Jan. 12, 2018). But a defendant is not precluded from filing another Rule 12 motion in response to an amended complaint that supersedes the original complaint. *In re Reilly*, 2020 WL 710371, at *6 (B.A.P. 9th Cir. Feb. 11, 2020), *aff'd*, 841 F. App'x 37 (9th Cir. 2021).

Because Unite's Motion is directed to the operative FAC, not to the superseded original complaint, the Motion does not run afoul of Rule 12(g)(2).

**B. Count 1: Defamation Per Se**

Under Arizona law, a plaintiff claiming private-party defamation must allege that (1) the defendant made a false statement; (2) the statement was communicated to someone other than the plaintiff; and (3) the statement tends to harm plaintiff's reputation. *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1061 (D. Ariz. 2012). A statement that tends to injure a person in their trade, business, or profession is defamation per se. *Green Acres Tr. v. London*, 688 P.2d 658, 668 (Ariz. Ct. App. 1983), *aff'd in part, vacated in part on other grounds*, 688 P.2d 617 (Ariz. 1984). When the matter is defamatory per se, the injury to the plaintiff is presumed without proof of special damages, and the plaintiff must plausibly allege facts that the matter was communicated to a third party. *See Vermedahl v. Heath*, 2026 WL 1834316, at *2 (Ariz. Ct. App. June 25, 2026)*; see also McClinton v. Rice*, 265 P.2d 425, 430 (Ariz. 1953).

Gomez plausibly alleges each element of a defamation claim. He identifies specific statements, speakers, recipients, and dates regarding the alleged defamatory statements. Specifically, Gomez alleges that Unite's representatives accused him of financial misconduct and dual employment; that his manager had pre-approved the pertinent travel; that Unite published the accusations after his termination; and that Unite published these accusations to named external recipients, including representatives of Willamette Health Council, Contexture, and Banner Health. (Doc. 12 at ¶¶ 24–25, 28–29, 35–40, 60–65.)

Unite argues that, while it does not admit making the alleged statements, it would still be protected under conditional privilege because it has a "legitimate business interest in monitoring the performance of its employees and communicating issues with an employee's performance or conduct that bears on the workplace." (Doc. 20 at 8.) Based on this alleged conditional privilege, Unite argues Gomez's defamation per se claim should be dismissed. (*Id.*)

A conditional or qualified privilege may shield a defendant from defamation liability when the circumstances create a legal, moral, or social duty to communicate. *Green Acres Tr.*, 688 P.2d at 624. Whether a privileged occasion exists is generally a

question of law. *Id.* But conditional privilege is an affirmative defense, and dismissal under Rule 12(b)(6) is proper only when the defense is established on the face of the operative complaint. *Chamberlain v. Mathis*, 729 P.2d 905, 908 (Ariz. 1986). Moreover, the privilege is qualified, not absolute. Even where the complaint establishes a privileged occasion, a plaintiff may plead that the defendant has abused the privilege through actual malice or excessive publication. *Green Acres*, 688 P.2d at 624–25. Actual malice exists where the speaker knew the statement was false or actually entertained serious doubts as to its truth. *Id.*; *Selby v. Savard*, 655 P.2d 342, 345–46 (Ariz. 1982). Excessive publication occurs when the defendant publishes the statement to an unprivileged recipient whose receipt of the information was not reasonably necessary to protect the interest underlying the privilege. *Green Acres Tr.*, 688 P.2d at 624; *see also* Restatement (Second) of Torts § 604, cmt. a. Because abuse ordinarily presents a factual question, dismissal is inappropriate where the complaint plausibly alleges facts supporting actual malice or excessive publication. *Green Acres*, 688 P.2d at 624–25.

Gomez further alleges that at least one recipient, Jamal Furqan, had no business relationship with Unite and that the publications were unnecessary to protect any legitimate interest. (Doc. 12. at ¶¶ 29(b), 35–40, 64.) Unite, however, argues that Gomez's classification of Jamal Furqan as a "non-client/non-partner" is "active deception." (Doc. 20 at 9.) In his original complaint, Gomez characterized Willamette Health Council as one of Unite's "most valuable accounts." (Doc. 1-1 at ¶ B.) In his FAC, Gomez alleges that "Willamette was not a [Unite] client or partner" and "never has been." (Doc. 12 at ¶ 29(b), 35.)

A plaintiff may not amend a pleading to avoid dismissal by "contradicting" prior factual allegations without providing a satisfactory explanation for the change. *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014). Although inconsistent allegations alone are not a basis to strike an amended pleading, a court need not ignore prior allegations when assessing the plausibility of the amended complaint and thus need not accept a later, contradictory allegation as true,

especially when the plaintiff supplies no additional facts reconciling the inconsistency. *Morales v. City & Cnty. of San Francisco*, 603 F. Supp. 3d 841, 846–47 (N.D. Cal. 2022).

Gomez does not provide an explanation for the contradiction between his original complaint and his FAC, nor does he allege sufficient facts establishing that Furqan is not a client of, or affiliated with a client of, Unite. I cannot determine, therefore, whether Unite published the alleged defamatory statements to an unprivileged recipient, and thus whether conditional immunity applies.

Accordingly, Count 1 will be dismissed.

**C. Count 2: Retaliation Under the AEPA**

The AEPA permits an employee to assert a claim for termination in retaliation for either: (1) refusing to commit an act or omission that would violate the Arizona Constitution or an Arizona statute; or (2) disclosing, in a reasonable manner, information or a reasonable belief that the employer or an employee has violated, is violating, or will violate the Arizona Constitution or an Arizona statute. Ariz. Rev. Stat. § 23-1501(A)(3)(c)(i)–(ii).

Gomez asserts that he has stated a claim under both provisions of the AEPA. With respect to § 23-1501(A)(3)(c)(i), Gomez characterizes his disclosure as a workplace-safety complaint and alleges that his refusal to participate in the requested LinkedIn activity was protected because that activity implicated A.R.S. §§ 12-1809, 13-2921, and 13-2923. (*Id.* at ¶¶ 68–75.) This argument fails because Gomez does not allege that updating his LinkedIn profile would violate either Arizona Revised Statutes section 12-1809, which governs injunctions against harassment, or sections 13-2921 and 13-2923, which address harassment and stalking. Nor does he allege that Unite directed him to contact, harass, stalk, or threaten anyone, or otherwise engage in conduct prohibited by those statutes. Simply put, Gomez has not alleged that Unite asked him to commit any unlawful act, and he therefore fails to state a claim under § 23-1501(A)(3)(c)(i).

Likewise, Gomez has failed to state a claim under § 23-1501(A)(3)(c)(ii). Gomez alleges that he disclosed a personal safety concern, but he does not allege that Unite had

violated, was violating, or was about to violate the statutes he identifies. (Doc. 12 at ¶¶ 9, 19.) Rather, he alleges that the requested LinkedIn activity could expose him to possible future harassment by third parties. That allegation does not plausibly allege a disclosure of an actual or anticipated statutory violation by Unite or one of its employees.

Gomez also invokes Arizona's occupational-safety law, Arizona Revised Statutes section 23-425. (Doc. 12 at ¶ 73.) But that section prohibits retaliation against an employee for exercising rights under Arizona's occupational-safety statutory scheme and supplies its own remedy. The AEPA does not authorize an additional tort remedy based on retaliatory conduct that violates section 23-425. Ariz. Rev. Stat. § 23-1501(A)(3)(b)(ii) (specifying that the exclusive remedies provision applies to "[t]he occupational safety and health act"); *Welch v. Pro. Transit Mgmt. of Tucson, Inc.*, 2005 WL 2897354, at *10 (D. Ariz. Nov. 2, 2005) (precluding plaintiff's AEPA retaliation claim arising from § 23-425 because that statute supplies the exclusive statutory remedy); *see also Guernsey v. Elko Wire Rope Inc.*, 2023 WL 5348567, at *3 (D. Ariz. Aug. 21, 2023) (finding that the plain language of the AEPA shows that an AEPA retaliation claim is precluded when the claim is based on another statute which contains its own remedies for a violation thereof). Because the exclusive remedies provision applies to Arizona's occupational-safety law, Gomez's AEPA claim arising out of § 23-425 fails.

Gomez has failed to sufficiently allege an AEPA claim, and I will dismiss Count 2.

### D. Count 3: Intentional Infliction of Emotional Distress

Under Arizona law, an IIED claim has three elements: (1) extreme and outrageous conduct, (2) intent to cause emotional distress or reckless disregard of the near certainty that distress will result, and (3) severe emotional distress caused by the conduct. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995). Unite argues that Gomez has failed to satisfy the first element because Unite's alleged conduct "was not extreme or outrageous as a matter of law." (Doc. 20 at 9.)

To satisfy the first element, the alleged conduct must go "beyond all possible bounds of decency" and be "atrocious and utterly intolerable in a civilized community." *Cluff v.*

*Farmers Ins. Exch.,* 460 P.2d 666, 668 (Ariz. 1969) (quoting Restatement (Second) of Torts § 46. cmt. d (1965)). "It 'must completely violate human dignity. The conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Pankratz v. Willis*, 744 P.2d 1182, 1189 (Ariz. Ct. App. 1987).

Applying that standard, Arizona courts have recognized that actionable IIED claims in the employment context are exceedingly rare and have dismissed claims based on workplace conduct that, although distressing or objectionable, does not rise to the exceptional level of extreme and outrageous conduct. In *Mintz*, the Arizona Court of Appeals affirmed judgment against a plaintiff who asserted an IIED claim despite allegations that an employer retaliated against her, made her work environment intolerable, and terminated her in bad faith, finding that those allegations were insufficient as a matter of law to prevail on an IIED claim. 905 P.2d at 564.

On the other hand, *Ford v. Revlon, Inc.* illustrates the circumstances that may satisfy this demanding standard. 734 P.2d 580 (Ariz. 1987). There, the Arizona Supreme Court sustained an IIED claim arising from an employer's failure to respond to an employee's repeated complaints of persistent and aggressive sexual assault and harassment, including unwanted sexual advances by a supervisor. *Id.* at 585–86.

Gomez's allegations are much closer to the facts in *Mintz* than the egregious circumstances in *Ford*. He bases his IIED claim on workplace criticism, exclusion from meetings, a termination allegedly made in retaliation for a safety disclosure, and post-termination false statements about his professional conduct. (Doc. 12 at ¶¶ 10–16, 21–25, 27–45, 77–84.) These allegations are incomparable to that in *Ford*, where the employer failed to respond to an employee's numerous reports of persistent and aggressive sexual assault and harassment. *See* 734 P.2d at 585–86.

Accordingly, Gomez's allegations do not meet the exceptionally high threshold of "extreme and outrageous conduct" that goes "beyond all possible bounds of decency." *Cluff*, 460 P.2d at 668. Because Gomez has failed to allege the sort of "extreme and outrageous" conduct necessary to support an IIED claim under Arizona law, Count 3 will

be dismissed.

**E. Count 4: Negligent Supervision and Retention**

In the Motion, Unite seeks to dismiss Count 4 for failure to state a claim because Arizona's Workers' Compensation Act supplies the exclusive remedy for workplace injuries based on an employer's alleged negligence. (Doc. 20 at 5.) Gomez voluntarily withdraws Count 4 in his Response to the Motion and requests that I acknowledge withdrawal without prejudice. (Doc. 24 at 11, 15.) Defendants do not oppose or object to this withdrawal. Accordingly, Count 4 will be dismissed without prejudice.

**F. Count 5: Breach of the Implied Covenant of Good Faith and Fair Dealing**

Arizona implies a covenant of good faith and fair dealing in every contract. *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). The covenant requires each party to refrain from conduct that impairs the other party's right to receive the benefits reasonably expected from the agreement. *Id*. at 569–70; *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002). "A party may breach the implied covenant even in the absence of a breach of an express provision of the contract by denying the other party the reasonably expected benefits of the agreement." *Gordon Grado M.D., Inc. v. Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799, 821 (D. Ariz. 2022) (quoting *Nolan v. Starlight Pines Homeowner's Ass'n*, 167 P.3d 1277, 1284 (Ariz. Ct. App. 2007)). Whether an asserted duty, justified expectation, or contractual benefit arises from the parties' agreement often presents a fact-bound inquiry that cannot be resolved on a motion to dismiss. *Id*. at 821–22 (holding that whether claimed implied duties arose from the parties' agreement was a question of fact not appropriately decided at the pleading stage).

Arizona law presumes that an employment relationship is at-will unless the parties sign a written agreement establishing a specified duration of employment or expressly limiting termination rights. Ariz. Rev. Stat. § 23-1501(A)(2). The implied covenant of good faith and fair dealing cannot create for-cause employment that the parties did not

expressly adopt. *See Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1040–41 (Ariz. 1985), *superseded in part by statute on other grounds as recognized in Cronin v. Sheldon*, 991 P.2d 231, 237 (Ariz. 1999). But the at-will character of employment itself does not eliminate an employee's contractual right to compensation for benefits actually earned under the employment agreement. *Wagenseller*, 710 P.2d at 1040*; Norman v. Recreation Ctrs.*, 752 P.2d 514, 519 (Ariz. Ct. App. 1988)

The question at the motion to dismiss stage is narrow. I do not decide whether the alleged commission plan is enforceable, whether it constitutes a contract, whether its terms require continued employment, whether Gomez's commissions had vested, or whether Unite acted to avoid paying compensation. I consider only whether Gomez has pleaded a plausible claim that an existing compensation arrangement provided an expected contractual benefit and that Unite deprived him of that benefit in bad faith.

I first address Unite's argument that Count 5 fails because Gomez was an at-will employee. (Doc. 20 at 10-11.) Unite contends that, under Arizona Revised Statutes section 23-1501(A)(2), a claim based on an employment contract requires a signed written agreement establishing a specified duration of employment or otherwise restricting the parties' termination rights. (*Id.*) Unite further argues that the alleged commission plan is not a contract for employment and cannot support an implied-covenant claim. (*Id.*)

This argument fails because whether Gomez was an at-will employee is irrelevant to his breach of covenant claim. Gomez limits Count 5 to a "compensation strand" and alleges that Unite acted to deprive him of commissions and compensation benefits allegedly governed by a commission plan. (Doc. 12 at ¶¶ 95-100.) That allegation is critical because section 23-1501(A)(2) and the at-will doctrine govern the parties' respective rights to end the employment relationship. They do not, however, resolve whether Unite complied with its obligations arising from the alleged agreement governing earned or vested compensation. *See* Ariz Rev. Stat. § 23-1501(A)(2); *Rawlings*, 726 P.2d at 569–70; *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 28–30 (Ariz. 2002). Put another way, Gomez does not

allege that Unite lacked authority to terminate him, nor does he assert that the alleged employment agreement established a fixed term of employment. (Doc. 12. at ¶¶ 96–100.) Rather, he confines Count 5 to "compensation benefits [and] commissions independent of termination," (*id.* at ¶ 96), which is actionable.

Nonetheless, Count 5 must be dismissed because Gomez fails to plausibly allege a breach of the implied covenant of good faith and fair dealing. Gomez merely alleges that his "employment agreement and commission plan created an implied covenant," (*id.* at ¶ 98,) without identifying any operative contractual provision, purported agreement, or commission plan that governed his commission eligibility, vesting, or payment. Gomez also does not allege facts showing that he actually earned or vested in any particular commission under the (unidentified) plan. And while Gomez alleges that Unite timed the account reassignments and termination to deprive him of "the benefits of his compensation plan," (*id.* at ¶ 99), he does not allege facts sufficient to support this assertion.

Because Gomez neither alleges a cognizable contractual entitlement nor a plausible interference with a vested commission plan, Count 5 will be dismissed.

### G. Leave to Amend

Rule 15 provides that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). As the term "freely" suggests, this "policy is to be applied with extreme liberality." *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018) (citation omitted). "Although leave to amend should be given freely, denying leave is not an abuse of discretion if it is clear that granting leave to amend would have been futile." *In re Cloudera, Inc.*, 121 F.4th 1180, 1189–90 (9th Cir. 2024) (citation omitted). District courts have "discretion to deny leave to amend when there are countervailing considerations such as undue delay, prejudice, [or] bad faith." *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) (quotation marks omitted).

As to Count 1, Unite specifically argues that Gomez acted deceptively in recharacterizing Willamette as a "non-client" in the FAC, and thus acted in bad faith. (Doc.

20 at 9, 11–12.) Because Gomez may plausibly explain this inconsistency, and because liberal construction is owed to pro se litigants, I grant leave to amend.

As to Count 2, Gomez has not alleged facts sufficient to plead a claim under the AEPA. He does not allege that Unite asked him to violate Arizona law or that he reported an actual or anticipated statutory violation by Unite. Further, any claim based on Arizona's occupational-safety law is barred as a matter of law because that statute provides its own exclusive remedy for retaliation. Gomez has not alleged any facts that would give rise to a claim under AEPA, nor has he suggested that he Could. Amendment to Count 2 would therefore be futile and would unduly prejudice Unite, and Gomez will therefore be denied leave to amend that count.

As to Count 3, I grant leave to amend because Gomez could plausibly allege facts that could cure the current deficiencies in his IIED claim.

Similarly, I grant leave to amend as to Count 5 because Gomez could conceivably allege facts sufficient to survive dismissal.

## IV. CONCLUSION

For the reasons stated above, Unite's Motion to Dismiss, (Doc. 20), is granted as follows:

**IT IS ORDERED** dismissing Gomez's defamation per se claim (Count 1) with leave to amend.

**IT IS FURTHER ORDERED** dismissing Gomez's AEPA retaliation claim (Count 2) with prejudice.

**IT IS FURTHER ORDERED** dismissing Gomez's IIED claim (Count 3) with leave to amend.

**IT IS FURTHER ORDERED** dismissing Gomez's negligent supervision and retention claim (Count 4) without prejudice.

**IT IS FURTHER ORDERED** dismissing Gomez's breach of the implied covenant of good faith and fair dealing claim (Count 5) with leave to amend.

///

**IT IS FURTHER ORDERED** that Gomez file any amended complaint no later than **September 28, 2026**. If Gomez seeks to make any amendments beyond those permitted by this Order, he must seek leave to do so pursuant to Federal Rule of Civil Procedure 15(a).

Dated this 14th day of September, 2026.



Honorable Sharad H. Desai
United States District Judge